IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN VINCENT MACKOVICH,

    Petitioner,

v.                     CASE NO. 13-3064-RDR

(fnu) RICHARDSON, Warden, et al.,

    Respondents.

**MEMORANDUM AND ORDER**

This pro se action was filed as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Missouri by an inmate currently held at the Leavenworth Detention Center, Leavenworth, Kansas (CCA/LDC).[1] The transferor court in Missouri granted petitioner's motion for leave to proceed in forma pauperis subject to modification by this court and transferred the case here based upon petitioner's current confinement within this judicial district.

Mr. Mackovich claims denial of medical treatment by respondents. Having examined the materials filed, the court finds that his pleadings are deficient in several respects. Mr. Mackovich is given time to cure the deficiencies discussed herein. If he fails to do so within the prescribed time, this action may be dismissed without prejudice and without further notice.

---

[1] The LDC is a private prison operated by the Corrections Corporation of America (CCA).

1

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

The statutory fee for filing a habeas corpus petition is $5.00. The filing fee for a civil complaint is $350.00. Mr. Mackovich seeks leave to proceed in forma pauperis (IFP), but has not filed a properly-supported motion. 28 U.S.C. § 1915 requires that a prisoner seeking to initiate an action without fees submit a motion accompanied by an affidavit described in subsection (a)(1) and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the six-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Furthermore, petitioner has not submitted a motion to proceed IFP on court-approved forms. Thus, the court does not have requisite information regarding balances, deposits, and withdrawals made in connection with Mackovich's institutional accounts at the prisons where he was confined during the relevant time period. However, petitioner has submitted an "Affidavit in Support of Request to Proceed in forma pauperis" (Doc. 2) in which he states that he has no funds in any account. The court grants leave to proceed in forma pauperis to proceed in this matter as a habeas corpus petition only based upon this minimal information because it appears likely that this petition will be dismissed for failure to state a claim under § 2241.

**FACTUAL BACKGROUND**

Allegations in the petition and attached exhibits indicate the following factual background.[2] Mr. Mackovich is a federal prisoner serving a sentence for bank robbery imposed in 1999. From 2005 to March 7, 2012, he was incarcerated at the United States Medical Center for Prisoners in Springfield, Missouri (Springfield). In his petition and attachments, he describes or includes medical records describing injuries received at various times as well as degenerative conditions involving his shoulders, back, spine, and legs. He also presents a series of medical evaluations, tests, diagnoses, and treatments by various medical personnel for his injuries and conditions. The medical personnel mentioned by name in the petition as having examined and treated Mackovich include Dr. Satterly, PT Christ, PA Toliver, Dr. Gapasin, Dr. Quinn, and specialists Neurologist Dr. Cornelison and Orthopedic Surgeon Dr. Redix.

Petitioner complains that on November 17, 2011, Dr. Gapasin ordered his transfer to a non-medical prison facility. He claims that this transfer was based on PT Christ's report that he had been resistant to treatment and non-compliant with physical therapy. He further claims that Christ's report was false[3] and that his transfer

---

[2] The court also takes judicial notice of the court records in the several other civil cases that have been filed by Mr. Mackovich in federal courts in California and Missouri.

[3] However, petitioner exhibits medical records, showing that in August 2011,

3

was in retaliation for his grievances and threat to file lawsuits. In support of the latter claim, he alleges that this occurred ten days after "the Region" answered his grievance claiming lack of medical treatment for this injury.[4] On March 11, 2012, Mackovich was transferred without prior notice to U.S.P. Victorville in California.

Apparently in support of his petition, Mackovich also attaches copies from a grievance process he initiated at Victorville in July 2012 with an informal resolution followed by a BP-9. In this grievance, he requested a "twin size orthopedic mattress" as "standard medical care," an MRI of his left shoulder and lumbar spine, and 90 MG of oxicotine twice daily for spinal nerve pain. He claimed that these items were "previously prescribed by three medical experts" at Springfield and by Dr. Fernandez at Victorville. In the alternative, he asked to be transferred to a medical facility that met unspecified federal agency standards. He also complained that Dr. Quinn had reduced and changed his medications and had not provided

---

PT Christ "attempted to instruct" Mackovich on six progressive relaxation exercises for his shoulder, and found he was in need of extra help and encouragement. Ten days later Christ discharged Mackovich at Rehab Services after seven sessions due to his "noncompliance and resistance during each and every therapy session." Christ advised Mackovich that he would need another referral to continue therapy. Doc. 1-1 at 10.

[4] According to petitioner's own allegations, the following month while he was still at Springfield, PA Tolliver and Dr. Gapasin reviewed his x-rays and referred him to the Neurologist Dr. Cornelison "to treat the muscle spasms in his legs" caused by his being slammed into steel bars. Dr. Cornelison recommended an epidural injection for his spine, and an injection and treatment for his left shoulder. On February 24, 2012, the shoulder injection was administered but not the epidural due to plaintiff's transfer.

proper treatment. Mackovich claimed mental and emotional damage and warned that he would seek money damages in a Bivens action unless Dr. Quinn provided the requested items. The Warden responded that any claim for inmate accident compensation must be filed in accordance with the Federal Tort Claims Act. Mackovich appealed to the Regional Director whose response dated September 24, 2012 (Doc. 1-1 at 28) did not address the FTCA remedy but instead indicated the review of Mackovich's prior medical records. The Regional Director's detailed response explained protocols for evaluating the necessity and risks associated with various treatments; that Mackovich has been provided chronic and incidental care consultations and a variety of past and current medications; and that recently new radiology requests had been submitted, a neurology consultation had been disapproved but the MRI was approved and performed, and the Orthopedic Surgery consultation was approved. The Regional Director concluded that Mackovich was receiving appropriate care for his current medical conditions. Mackovich submitted an appeal to the Central Office, but stated in his Memorandum in Support that they chose not to respond to this final appeal.[5] Mackovich has recently filed a "Supplement" (Doc. 6) to his

---

[5] Mackovich references another grievance he filed at USP-Victorville in which he requested another x-ray of his shoulder, a neurological consult for his lumbar spine and muscle spasms, and a transfer back to a medical facility "due to the fact that the USP does not have beds wide enough to lay his arms and shoulders on or a physical therapy department to care for his injuries." He was granted an orthopedic surgeon consult and the shoulder x-ray. On October 12, 2012, surgeon Dr. Redix diagnosed Mackovich as having "an old ancient glenoid fracture," stated that it was "now time for the patient to have a total shoulder arthroplasty," and

5

petition, providing the decision of the Central Office, which was received by him on March 29, 2013. The Central Office affirmed the decisions of the warden and the Regional Administrator, and listed the many ailments and long series of treatments received for those ailments. It was noted that petitioner has stated he wants to forego surgery until he feels he is in the proper facility, and that he will be re-evaluated for shoulder surgery once he is back in BOP custody.

Mackovich alleges that he was transferred out of Victorville by order of the Missouri federal district court in which he currently has civil lawsuits pending; and that on January 15, 2013, after trial in one of his cases the Missouri federal court ordered him detained at the CCA/LDC pending two other trials involving Springfield prison officials. He alleges that "Dr. Mendel at CCA" recommended his transfer to a Federal Medical Center because the CCA does not have physical therapy facilities or beds to accommodate post-surgical arthoplasty patients. He alleges that his two other civil trials could take another year. He claims that "respondents" have acted with deliberate indifference and knowingly and intentionally denied him standard or any medical care for his fractured left shoulder in violation of his rights under the Eighth Amendment.

In his petition, Mr. Mackovich fails to specify what relief he seeks other than that "to which he may be entitled in this proceedings." In his "Memorandum in Support" he asks the court to

---

advised that he may also need rotator cuff repair.

order his transfer to the Federal Medical Center in Rodchester, Minnesota or Butner, North Carolina, or anywhere other than Springfield. He also requests appointment of counsel.

**SCREENING**

District courts are to promptly review habeas corpus petitions and summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 Cases. An initial review of the petition filed in this case indicates that this court lacks jurisdiction over petitioner's claims under § 2241, and that the petition should be dismissed as a result.

**STANDARDS**

Courts are obligated to examine their jurisdiction sua sponte and dismiss any action where it is lacking. *See* Fed.R.Civ.P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by . . . a court on its own initiative, at any stage in the litigation . . . .")(internal citation omitted). Constitutional attacks upon conditions of confinement that do not affect the fact or duration of that confinement, are not grounds for federal habeas corpus relief and are therefore not cognizable in a habeas corpus petition. *See Nelson v. Campbell*, 541 U.S. 637, 643

7

(2004)("constitutional claims that merely challenge the conditions of a prisoner's confinement . . . fall outside of [the 'core' of habeas corpus]"); *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000)(Federal claims challenging the conditions of confinement generally do not arise under § 2241.); *McIntosh v. U.S. Parole Commission*, 115 F.3d 809, 812 (10th Cir. 1997)("A habeas corpus proceeding attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement. In contrast, a civil rights action . . . attacks conditions of the prisoner's confinement. . . ."). As the Tenth Circuit has reasoned, there are logical distinctions between prison condition suits brought under civil rights laws and execution of sentence matters brought under § 2241. *See, e.g., United States v. Furman*, 112 F.3d 435, 438-39 (10th Cir. 1997)(challenges to good-time credit and parole procedure go to execution of sentence and should be brought under § 2241; challenges to conditions of confinement and related civil rights allegations should be brought pursuant to civil rights laws).

## DISCUSSION

### *1. Improper Respondents*

The only proper respondent in a § 2241 petition is the petitioner's current custodian, which in this instance is Warden Richardson. Accordingly, this action is dismissed as against Eric

8

Holder and the "Federal Bureau of Prisons."

### 2. *Petitioner States No Grounds for Relief Under § 2241*

Mr. Mackovich is no stranger to federal court. Nevertheless, he improperly incorrectly characterizes his allegations of denial of necessary medical treatment and that he is entitled to be transferred to a federal medical facility to receive treatment as claims regarding the execution of his sentence. These allegations are instead claims regarding the conditions of his confinement. The Tenth Circuit Court of Appeals recently dismissed a § 2241 petition attempting to challenge conditions of confinement in *Palma-Salazar v. Davis*, 677 F.3d 1031, 1034 (10th Cir. 2012). In doing so, that Court reasoned as follows:

> Habeas corpus review is available under § 2241 if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the "traditional function of the writ is to secure release from illegal custody." McIntosh, [115 F.3d at 811](quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). "Though the Supreme Court has not set the precise boundaries of habeas actions, it has distinguished between habeas actions and those challenging conditions of confinement. . . ." Rael [223 F.3d at 1154]. This court has "endorsed this distinction." Id. In this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus. McIntosh, 115 F.3d at 812. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action. (Citations omitted).

In short, Mr. Mackovich's claims regarding the conditions of his

9

confinement may not be litigated in a § 2241 petition.

The same is true with respect to Mackovich's request that this court order his transfer to a federal medical facility. In *Palma-Salazar* the Tenth Circuit rejected a similar claim, finding it was one regarding confinement conditions:

> This court has stated "that a request by a federal prisoner for a change in the place of confinement is properly construed as a challenge to the conditions of confinement and, thus, must be brought pursuant to [Bivens]." United States v. Garcia, 470 F.3d 1001, 1003 (10th Cir. 2006). In Garcia, we held that two federal prisoners who filed motions seeking transfer from one detention facility to another had to bring their claims through a Bivens action. Id. at 1002-03. We reasoned that neither prisoner "sought release from the custody of the Bureau of Prisons or a shortened period of incarceration" but instead, a "change in the place of confinement." Id.

*Id.* Like in *Palma-Salazar* petitioner seeks a change in the place of his confinement and challenges the BOP's choice of prisons. Petitioner's claims amount to challenges to the conditions of his confinement rather than the fact or duration of his federal custody. *Id*. at 1035 (citing *Boyce v. Ashcroft*, 251 F.3d 911, 913-14 (10th Cir. 2001)). Accordingly, the court finds that petitioner fails to state grounds for relief under § 2241.[6]

### 3. *Exhaustion Not Shown*

Even if Mr. Mackovich alleged facts to support a claim for relief under § 2241, he has not shown that he has fully and properly exhausted the available administrative remedies on events that are alleged to

---

6   In fact, the court believes that transfer of this action to this court was in error and a result of the transferor court's apparent failure to look beyond petitioner's mischaracterization of his claims as ones under § 2241.

10

have occurred at the LDC/CCA, and thus within this judicial district. A federal prisoner is required to fully and properly exhaust all available administrative remedies upon the very claims raised in his petition prior to filing an action in federal court. Petitioner does not show that he has exhausted the well-established administrative remedies within the BOP or those available at the LDC/CCA regarding the alleged denial of medical care at the LDC/CCA or on his claim that he needs to be transferred out of the LDC/CCA to receive proper medical treatment.

### *3. Transfer not Unconstitutional*

Mackovich does not allege facts to establish that he has a liberty interest in remaining in or being transferred to a particular prison. It follows that his allegation that he was transferred from Springfield to the federal prison in California without prior notice does not, without more, state a claim of denial of due process or any other federal constitutional right.

### *4. Retaliation claim*

Mackovich's allegations of retaliatory transfers are also conditions claims and, in any event, are completely conclusory. He does not allege sufficient facts to show that he would not have been transferred to the LDC/CCA "but for" a retaliatory motive. In fact, he makes contrary factual allegations including that he was transferred by the court hearing his civil cases. His allegations show that his transfer was 15 weeks after he completed the four-tiered

11

grievance process, which hardly suggests retaliation for initiating this grievance. Moreover, the affidavit of a prison official in one of his other civil cases reveals that his medical-needs status was downgraded and that his new status required his transfer out of a medical facility, which has very limited space. Mr. Mackovich presents no facts whatsoever establishing that this administrative decision was irrational.

### 5. *Petition Not Construed as Civil Rights Complaint*

The court declines to liberally construe this petition as a complaint under § 1331 or any other federal law because doing so "borders on advocacy."[7] *See Richards v. Bellmon*, 941 F.2d 1015, 1019 fn. 3 (10th Cir. 1991). As a consequence, this court does not enter any order as to the merits of a potential Bivens or FTCA action based upon Mr. Mackovich's allegations that he has been denied medical treatment.

Plaintiff is not given the opportunity to amend his pleading to a civil rights complaint because it would likely be subject to dismissal for some of the same and several additional reasons. First and foremost, none of the persons alleged by Mackovich to have been directly involved in his treatment or transfers resides within this judicial district. As a result this court would lack jurisdiction

---

7   The statutory filing fee for a civil complaint in federal court is $350.00, and being granted leave to proceed IFP does not relieve the plaintiff of the obligation to pay the full fee. Instead, it merely allows him to pay the fee through payments automatically deducted from the inmate's institutional account.

12

even if Mackovich named proper defendants.[8] In addition, petitioner's allegations, though numerous and detailed, are insufficient to state a claim of denial of medical care under the Eighth Amendment. The allegations and exhibits in this case plainly reveal that Mr. Mackovich has received a lengthy and continuous series of medical tests, diagnoses, monitoring, treatments, and medications through the BOP Health Services. His denial of treatment claim appears to be based upon his mere difference of opinion with prison medical personnel regarding diagnosis and treatment, which is not sufficient to state a claim of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.);

---

8   An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which a complaint is based. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.). Mackovich names only the BOP, the U.S. Attorney General, and the Warden as respondents, and does not describe any direct act or inaction by each respondent that actually caused either his transfer to the LDC/CCA or a denial of necessary medical treatment.

*Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."). As the United States Supreme Court has explained, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 105-106.

**PETITIONER REQUIRED TO SHOW CAUSE**

Petitioner is given time to show cause why this § 2241 petition should not be dismissed for the reasons stated herein including lack of jurisdiction. If he fails to show good cause within the prescribed time, this action may be dismissed without prejudice and without further notice.

Petitioner has not filed a separate motion for appointment of counsel. His request for counsel imbedded in his pleading is denied because he has no right to counsel in a § 2241 proceeding, and it appears that this action will be dismissed upon screening.

**IT IS THEREFORE ORDERED** that petitioner is granted thirty (30) days in which to show cause why this action should not be dismissed for the reasons stated herein including that this court lacks

14

jurisdiction to hear his conditions claims under 28 U.S.C. § 2241.

**IT IS FURTHER ORDERED** that petitioner's Financial Affidavit (Doc. 2) is construed as his motion to proceed in forma pauperis and is granted to the extent that this matter proceeds as a § 2241 petition.

**IT IS FURTHER ORDERED** that petitioner's Motion to Supplement (Doc. 6) with exhibits is granted.

**IT IS SO ORDERED.**

**DATED:  This 17th day of May, 2013, at Topeka, Kansas.**

s/RICHARD D. ROGERS<br>**United States District Judge**